USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 93-1154 STEPHEN DARR, TRUSTEE OF COLUMBUS MORTGAGE AND LOAN CORPORATION OF RHODE ISLAND, INC., Plaintiff, Appellee, v. JOSEPH R. MURATORE, SR., ET AL., Defendants, Appellants. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND [Hon. Ronald R. Lagueux, U.S. District Judge] ___________________ ____________________ Before Cyr and Stahl, Circuit Judges, ______________ and Fuste,* District Judge. ______________ ____________________ Paul J. Bogosian, Jr. with whom Hodosh, Spinella & Angelone were _____________________ ___________________________ on brief for appellants. Joseph Avanzato with whom John F. Bomster and Adler Pollock & _______________ ________________ ________________ Sheehan Incorporated were on brief for appellee. ____________________ ____________________ November 1, 1993 ____________________ ____________________ *Of the District of Puerto Rico, sitting by designation. FUSTE, District Judge. The Trustee for a bankrupt FUSTE, District Judge. ______________ mortgage lending institution brought an action against the former chairman and chief executive officer of the company, his wife, who was also an officer and director of the bankrupt lender, and three separate real estate and development corporations controlled by the couple. The Trustee's action sought to recover over two million dollars allegedly owed to the bankrupt lending institution by defendants. The Trustee contends that defendants first, improperly created the debt, second, fashioned a favorable calculation of the amount due, and third, incorrectly declared the loans repaid through a questionable real estate conveyance. The Trustee claims that defendants violated their fiduciary duty to the institution and to the lender's numerous debenture holders. Defendants argue that no fiduciary duty was transgressed, and counter that the Trustee committed waste and failed to mitigate damages to the bankrupt estate by allowing foreclosure on the properties which allegedly were conveyed in order to satisfy the debt. They also take issue with the method of debt calculation utilized by the district court. In addition, defendants contend that they are entitled to a significant reduction of any outstanding debt because of the equity in, and rental income from, the conveyed real estate, and to a further reduction of the debt because of the Trustee's alleged failure to prevent the foreclosures of the properties. Finally, defendants -2- 2 argue that they should receive a setoff of any debt owed to plaintiff as a result of various unrelated expenses allegedly advanced by defendants to the plaintiff. In the instant appeal, defendants challenge two decisions of the district court: A grant of partial summary judgment with respect to the total remaining debt owed by defendants, and the court's certification of final judgment. We now affirm the district court's partial summary judgment and hold affirm that final judgment certification was justified. Defendants' claims of payment through property transfer, waste, failure to mitigate, setoff, and miscalculation of debt are unavailing as a matter of law. I. I. Background Background __________ From August 1961 to December 1991, Defendant-Appellant Joseph R. Muratore, Sr. ("Mr. Muratore") owned and controlled a mortgage lending institution, Columbus Mortgage & Loan Corporation of Rhode Island, Inc., as well as its wholly-owned real estate development corporation subsidiary, Columbus Development Corporation. The nature of the business of Columbus Mortgage was to serve as a mortgage lending firm specializing in residential real estate loans secured by first and second mortgages on real estate. At some point, however, Columbus Mortgage entered into the business of making unsecured loans in its real estate dealings, financing them in large part through -3- 3 the sale of debentures.1 Columbus Mortgage eventually took its business a step further and sold a second generation of debentures to refinance the first generation of maturing obligations. As of December 31, 1989, Columbus Mortgage had $4,400,139 in outstanding debentures. It is undisputed that Mr. Muratore owed a fiduciary duty to the debenture holders, as well as to Columbus Mortgage. In February 1991, Columbus Mortgage declared bankruptcy, acknowledging its inability to repay its debts in full, including its debentures. Mr. Muratore and his wife, Defendant-Appellant Rose E. Muratore ("Mrs. Muratore"), controlled other Rhode Island corporations, officially unrelated to Columbus Mortgage, that, inter alia, were in the business of selling and developing real estate: Defendants-Appellants Muratore Agency, Inc. ("Muratore Agency"), Muratore Realty Corp. ("Muratore Realty"), and Shawomet Holding Associates ("Shawomet") (collectively referred to as the "Separate Muratore Companies"). We refer, collectively, to all Muratore persons and Muratore corporations as the "Muratore Defendants". There is no doubt that Columbus Mortgage provided several unsecured loans to the Separate Muratore Companies, drawing funds from the pool of money accumulated by the selling of debentures to citizens of Rhode Island. These loans were by ____________________ 1"Debentures are unsecured debt, as opposed to bonds, which are secured by the assets of the issuing company." In re Worlds _____________ of Wonder Sec. Litigation, 814 F.Supp. 850, 854 n.2 (N.D.Cal. __________________________ 1993). See also SEC v. Howatt, 525 F.2d 226, 229 (1st Cir. ________ ______________ 1975). -4- 4 no means insignificant. In fact, loans to the Separate Muratore Companies, most or all of which were unsecured, totaled $2,044,313 as of June 30, 1989, more than half of Columbus Mortgage's total assets of $3,973,791 at that time. In addition, the record strongly suggests that Columbus Mortgage's funds were used to pay miscellaneous personal debts of Mr. Muratore. The record contains no proof of repayment from Mr. Muratore to Columbus Mortgage. The bottom line is that the Muratore Defendants claim that their total indebtedness was approximately $900,000 in December 1990, and $1,200,000 in 1992. Plaintiff- Appellee Stephen Darr, Chapter 11 Bankruptcy Trustee of Columbus Mortgage ("Trustee"), argues that the defendant's obligation was over $2,000,000. The Muratore Companies paid off some portion of the debt in cash. However, the payments were applied to principal rather than to accumulated interest. The Muratore Defendants claim that their remaining debt to Columbus Mortgage was discharged in full on or about December 15, 1990, when two pieces of real estate of disputed equity value were conveyed from the Muratore Defendants to Columbus Mortgage.2 In an affidavit, Mr. Muratore, an experienced appraiser in his own right, affirmed under oath that at the time of the conveyance he believed that the fair market value of the properties was $2,000,000, and that approximately $800,000 were still owed on the properties' ____________________ 2The two properties conveyed by the Muratore Defendants to Columbus Mortgage are located at 1845 Post Road, Warwick, Rhode Island, and 275-277 Atwells Avenue, Providence, Rhode Island. -5- 5 mortgages. Thus, according to Mr. Muratore, the equity value of the properties was approximately $1,200,000. In the affidavit, Mr. Muratore also referred to an independent aggregate appraisal of the properties, before encumbrances, of $1,660,000, meaning that as of December 15, 1990 the equity in the properties was approximately $860,000. Scanning the record, we only find an independent appraisal of the Post Road Property, valued at $856,000 as of December 19, 1992. The Trustee challenges the Muratore Defendants' valuation of the property, contending that given the unpaid portion of the mortgages on the two properties, their aggregate equity value was less than $100,000. The Muratore Defendants claim that the Trustee committed waste by failing to refinance the properties' mortgages and allowing foreclosure, causing the estate to lose whatever equity remained. Columbus Mortgage, through the Trustee, argues that it permitted foreclosure on the properties pursuant to 11 U.S.C. 362 because they lacked equity value.3 The Muratore Defendants contend that they deserve a reduction of the amount owed to Columbus Mortgage equal to the sum of the equity in the properties, the accrued rental income derived from the properties before foreclosure, and funds owed to the Separate Muratore Companies by Columbus Mortgage stemming from transactions unrelated to the debt at issue in this case. ____________________ 311 U.S.C. 362 provides for an automatic stay on the property of an estate which is undergoing voluntary or involuntary bankruptcy. However, under 362(d)(2)(A), a party in interest may obtain relief from the stay if the debtor has no equity in the property. -6- 6 Two months after the conveyance of the properties, on February 15, 1991, Columbus Mortgage, under the guidance of Mr. Muratore, filed a voluntary Chapter 11 bankruptcy petition with the United States Bankruptcy Court for the District of Rhode Island. 11 U.S.C. 1121. At first, Columbus Mortgage operated as a debtor in possession; however, the creditors' committee brought an adversary proceeding in the bankruptcy court for the purpose of collecting money damages from the Muratore Defendants. In early April 1992, the adversary proceeding was withdrawn to the United States District Court for the District of Rhode Island. Soon thereafter, Stephen Darr was appointed Columbus Mortgage's Bankruptcy Trustee. The Trustee, substituted for the creditors' committee, continued a six-count action to recover damages allegedly sustained by the estate and supposedly caused by the Muratore Defendants.4 On October 14, 1992, the Trustee filed a Fed. R. Civ. P. 56 motion for partial summary judgment and for entry of final judgment on Count III of the first amended complaint alleging a debt due and owing. Fed. R. Civ. P. 54(b). On January 12, 1993, the district court granted the Trustee's motion and entered final judgment on Count III against the Muratore Defendants in the amount of $2,146,034.24. The district court concluded that the Muratore Defendants were in fact one entity, one corpus, and ____________________ 4The Trustee's six-count action includes the following allegations: Count I, Breach of Fiduciary Duty; Count II, Conversion; Count III, Debt Due and Owing; Count IV, Breach of Contract, and Count V, a second Breach of Contract. -7- 7 ordered final judgment on Count III because there was "no just reason for delay." The district judge's primary rationale for Rule 54(b) certification was that the Muratore Defendants' assets available to settle the claim were barely sufficient to pay the debt and that relief should be granted to the debenture holders as soon as possible. The court noted that entry of judgment on Count III would probably cause the other counts to become moot because of the limited resources of the Muratore Defendants. II. II. Summary Judgment Summary Judgment ________________ In order to review the district court's certification of summary judgment on Count III of the adversary proceeding against Mr. Muratore, we must decide whether the district court's ruling fulfilled the requirements for summary judgment and Rule 54(b) certification.5 A. Standard for Review A. Standard for Review ___________________ Our review of summary judgment decisions is plenary. Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990). Summary ____________________ judgment is appropriate "if the pleadings, depositions, answers ____________________ 5We do not disturb the district court's determination that the various actorswho constitute theMuratore Defendants arealter- egos of one another. That finding by the district court has not been seriously challenged on appeal and rests on sound legal principles. See Oman Int'l Fin. Ltd. v. Hoiyong Gems Corp., 616 ___ __________________________________________ F. Supp. 351, 363-66 (D.R.I. 1985) (discussing law of corporate collectivity) (affirmatively cited in United Elec., Radio and ________________________ Mach. Workers of America v. 163 Pleasant Street Corp., 960 F.2d _______________________________________________________ 1080, 1096 (1st Cir. 1992)); cf. Vucci v. Myers Bros. Parking ___ ______________________________ Sys., 494 A.2d 530, 535-36 (R.I. 1985). Thus, we will discuss ____ the Columbus Mortgage debt as an obligation of the aggregate of defendants without segregating loans among the particular Muratore entities. -8- 8 to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In applying this standard to the instant case, we view the record in the light most favorable to the nonmovants, the Muratore Defendants. Bank ____ One Texas, N.A. v. A.J. Warehouse, Inc., 968 F.2d 94, 97 (1st _________________________________________ Cir. 1992). A nonmovant, however, bears the burden of placing at least a single material fact into dispute after a moving party offers evidence of the absence of a genuine issue. See Jaroma v. ___ _________ Massey, 873 F.2d 17, 20 (1st Cir. 1989) (per curiam); White v. ______ ________ Hearst Corp., 669 F.2d 14, 17 (1st Cir. 1982). "[T]here is no ____________ issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). A _________________________________ nonmoving party has a duty to oppose a cogent summary judgment motion. Id. ___ B. Discussion B. Discussion __________ Defendants assert that there exist genuine issues of material fact regarding the debt owed to Columbus Mortgage which preclude a grant of summary judgment. In order to address these allegations, we must examine whether the real estate conveyance was a valid debt payment, whether the defendants were entitled to any reductions of the debt, and whether it was correct for the defendants to apply payments to the principal rather than the interest component of the debt. -9- 9 1. Were Real Estate Conveyances Debt Payments? 1. Were Real Estate Conveyances Debt Payments? ___________________________________________ The record clearly demonstrates that the Muratore Defendants owe Columbus Mortgage a significant sum of money. Defendants admit to a certain amount of debt to Columbus Mortgage, but argue that prior to filing for Chapter 11 bankruptcy, two valuable properties were conveyed from the Separate Muratore Companies to Columbus Mortgage in partial satisfaction of the admitted debt. Regardless of the fiduciary propriety of the real- estate- for-debt transaction,6 Mr. Muratore admitted before the district court that the obligation created by his arrangement of Columbus Mortgage loans to the Separate Muratore Companies was a money debt. There was no agreement that the debt could be repaid through a transfer of properties chosen by the debtor. Nor was there evidence of custom from which such an agreement could be implied. Since loans are to be normally repaid with money and not with houses or any other less liquid type of asset, even when viewing the record in the light most hospitable to the Muratore Defendants we find untenable the argument that the real-estate ____________________ 6This court finds questionable that the Separate Muratore Companies attempted to repay a seven-digit debt through a property transfer at the direction of Mr. Muratore when, two months later, the creditor, Columbus Mortgage, voluntarily filed a Chapter 11 bankruptcy petition also by the hand of Mr. Muratore. The facts undisputedly show that Mr. Muratore was effectively in control of both the creditor and debtor institutions involved in these transactions. It is evident that a large cash debt was supposedly satisfied at a time and under circumstances which greatly benefitted the Muratore Defendants and harmed the soon-to-be declared bankrupt company controlled by Mr. Muratore, working to the detriment of the unsecured creditors of that company. -10- 10 transfer satisfied the debt. We agree with the district court that the debt and the real estate transaction have separate identities. No genuine factual dispute revolves around the issue of loan satisfaction by the real estate conveyance. Without prejudice to the bankruptcy court's final assessment of any claim by the Muratore Defendants arising from the real estate transfer, the money debt remains and the district court properly decided to enforce the payment of the same. We now turn to a determination of the extent of the debt. 2. Waste, Failure to Mitigate, and Setoff 2. Waste, Failure to Mitigate, and Setoff ______________________________________ The district court held as a matter of law that what the Muratore Defendants have defined as waste and failure to mitigate are unavailing theories as they pertain to the motion for summary judgment on Count III. We agree. Both the waste and failure to mitigate theories operate on the presumption that the real-estate conveyance was a payment toward the Muratore Defendants' debt. The district court found that the real-estate conveyance cannot rightly be deemed the equivalent of a money payment on the Muratore Defendants' debt and, therefore, any credit or complaint relating to the transferred properties is entirely separate from the debt owed by defendant, and may be brought up before the bankruptcy court. The $18,000 in rental income that the bankrupt estate supposedly received due to its possession of the properties is no different. The question of setoff is different than those of waste and failure to mitigate, in that defendants' theory of -11- 11 setoff involves debts not dependant on the real property conveyance. The Muratore Defendants allege a right to a setoff of $418,046.25 under 11 U.S.C. 553,7 citing evidence of indebtedness carried on the ledger cards of Columbus for wages paid by the Muratore Defendants to employees of Columbus, and for rental obligations due from Columbus. Section 553 does not create new substantive law, but incorporates in bankruptcy the common law right of setoff, with a few additional restrictions. U.S. ex rel. I.R.S. v. Norton, 717 ______________________________ F.2d 767, 772 (3d Cir. 1983). The right of setoff allows parties that owe mutual debts to each other to assert the amounts owed, subtract one from the other, and pay only the balance. In re ______ Bevill, Bresler & Schulman Asset Mgmt. Corp., 896 F.2d 54, 57 (3d ____________________________________________ Cir. 1990). However, allowing setoff undermines a basic premise of bankruptcy law, equality among creditors, by "permit[ting] a creditor to obtain full satisfaction of a claim by extinguishing an equal amount of the creditor's obligation to the debtor . . . in effect, the creditor receives a 'preference'." Id. (quoting ___ In re Braniff Airways, Inc., 42 B.R. 443, 448 (Bankr. N.D. Tex. ___________________________ 1984)). As a result, setoff in the context of a bankruptcy is not automatic. Under section 553, debts cannot be setoff unless they are mutual. Mutuality requires that the debts "be in the same ____________________ 7In pertinent part, 11 U.S.C. 553 provides: "[T]his title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case." 11 U.S.C. 553(a) (1993). -12- 12 right and between the same parties, standing in the same capacity." 4 Collier on Bankruptcy 553.04 (15th ed. 1992). _______________________ Where the liability of the party seeking the setoff arises from breach of a fiduciary duty, mutuality of debts does not exist and therefore no setoff is available. Id. See also In re Drexel ___ ___ ____ _____________ Burnham Lambert Group, Inc., 113 B.R. 830, 847-48 (Bankr. ______________________________ S.D.N.Y. 1990); In re Esgro, Inc., 645 F.2d 794, 797 (9th Cir. __________________ 1981) (discussing precursor to section 553); Allegaert v. Perot, __________________ 466 F.Supp. 516, 518 (S.D.N.Y. 1978). If the district court correctly found that Mr. Muratore breached his fiduciary duty to Columbus Mortgage by causing the unsecured loans to the Muratore Defendants to be made, then the debts of the two parties are not mutual and no setoff is allowed as a matter of law. The district court determined that the Muratore Defendants violated their fiduciary responsibilities and assisted in the bankruptcy of Columbus Mortgage by taking actions to their benefit and against the interests of the debenture holders. The Muratore Defendants argue that the loan transactions carried on between Columbus Mortgage, on the one side, and the Separate Muratore Companies and the Muratores, on the other, were honest, arm's-length business dealings. Defendants cite their accounting documentation as proof of the legitimacy of the loans and terms at issue. After reviewing the record, we cannot find error in the district court's determination that the Muratore Defendants seriously breached their fiduciary obligations. This breach of fiduciary duty -13- 13 created a lack of mutuality between the unsecured loans which were made to the Muratore Defendants by Columbus Mortgage and any money advanced to Columbus Mortgage by the Muratore Defendants. As a result, there is no genuine issue of material fact regarding the propriety of any setoff of the debt owed by the Muratore Defendants. 3. Applying Cash Payments to Interest 3. Applying Cash Payments to Interest __________________________________ Defendants next argue that summary judgment was improper because of a dispute about the effect of partial money payments on their debt obligations. Defendants claim that the amount owed is lower than the trial court found because the partial payments were to be used to reduce the principal (without capitalizing unpaid interest) rather than first paying accumulated interest.8 The district court concluded that repayment should have been on an interest-first basis and found that the Separate Muratore Companies owed substantially more than previously suggested by the Columbus Mortgage account ledgers. The Muratore Defendants argue that the district court did not have sufficient evidence to decide that the repayment method should have been on an interest-first basis. It is undisputed that the record contains no express agreement detailing the method for repaying the loans. Sample promissory notes used by Columbus Mortgage suggest that the standard practice for Columbus Mortgage was payment of interest ____________________ 8By allowing the payment of principal first, the Muratore Defendants were able to save over $600,000 in interest on their loans. -14- 14 first, with the remainder of any given payment going toward decreasing the principal. Defendants did not place into the record any promissory notes allowing payment of principal first, then interest. Defendants rely primarily on unsubstantiated statements and assertions that question the evidence submitted by the Trustee, and fail to present hard evidence to cast doubt on the Trustees' or the district court's calculations of the outstanding obligation. Defendants assert that such calculations were done incorrectly and were based on incorrect assumptions, but provide no evidenced alternatives to support these assertions. In short, Defendants offer no "significant probative evidence" that creates a genuine dispute about the terms of repayment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 ________________________________ (1986). We note further that the dispute over the terms of repayment ultimately presents not a factual question for a jury but a legal question for the court. While Rhode Island law is unclear on the subject, the normal rule throughout the nation is that, absent an express agreement to the contrary, there is a presumption that loan payments are made to interest first and then principal.9 See In re Department of Energy Stripper Well ___ _________________________________________ Exemption Litigation, 944 F.2d 914, 916 (Temp. Emer. Ct. App. _____________________ ____________________ 9Some courts have referred to this principle as the "'United States Rule' on partial payments." Shutts v. Phillips Petroleum _____________________________ Co., 567 P.2d 1292, 1321 (Kan. 1977), cert. denied., 434 U.S. ___ _____________ 1068 (1978). The rule has ancient roots; it was first acknowledged by the Supreme Court over a century and a half ago. See Story v. Livingston, 38 U.S. 359, 371 (1839). ___ ___________________ -15- 15 1991); Bonjorno v. Kaiser Aluminum & Chemical Corp., 865 F.2d _______________________________________________ 566, 576 (3d Cir. 1989), aff'd in part and rev'd in part on other ________________________________________ grounds, 494 U.S. 827 (1990); Devex Corp. v. General Motors _______ _______________________________ Corp., 749 F.2d 1020, 1025 n.6 (3d Cir. 1984), cert. denied, 474 _____ ____________ U.S. 819 (1985); Nat G. Harrison Overseas Corp v. American Barge ________________________________________________ Sun Coaster, 475 F.2d 504, 507 (5th Cir. 1973); Whiteside v. ____________ ____________ Washington Loan and Trust Co., 95 F.2d 83, 87 (D.C. Cir. 1937); ______________________________ Torosian v. National Capital Bank, 411 F. Supp. 167, 173 (D.D.C. _________________________________ 1976); Shutts v. Phillips Petroleum Co., 567 P.2d 1292, 1321 ___________________________________ (Kan. 1977), cert. denied, 434 U.S. 1068 (1978); Landess v. _____________ ___________ State, 335 P.2d 1077 (Okla. 1958); see also 45 Am. Jur. 2d, _____ ________ Interest and Usury, 99, pp. 88-89; 47 C.J.S., Interest, 66, pp. 72-73. As the United States Rule contemplates that loan repayments ordinarily are to be credited first to interest, absent a contrary agreement, we are not inclined to conjure a different rule under Rhode Island law. Moreover, sample promissory notes, testimony, and the national custom of crediting loan repayments first to interest, all support the district court's conclusion. Since there was no genuine factual dispute about the property transfer, the alleged reductions or the manner of debt calculation, we hold that the district court correctly calculated the outstanding debt at $2,146,034.24. III. III. Entry of Final Judgment Entry of Final Judgment _______________________ A. Standard for Review A. Standard for Review ___________________ -16- 16 A district court "may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment." Fed. R. Civ. P. 54(b). Orders pursuant to Rule 54(b) are reviewable by the Court of Appeals for abuse of discretion by the trial court. Sears, Roebuck & Co. v. Mackey, 351 U.S. 427, _______________________________ 437 (1956); Ginett v. Computer Task Group, Inc., 962 F.2d 1085, ____________________________________ 1092 (2d Cir. 1992). This court, however, has limited the Mackey ______ holding to cases like the instant one in which a Rule 54(b) certificate has been granted by the district court. Makuc v. _______ ________ American Honda Motor Co., 692 F.2d 172, 173 (1st Cir. 1982). ________________________ In Spiegel v. Trustees of Tufts College, 843 F.2d 38 _____________________________________ (1st Cir. 1988), we held that the district court's certification of a final judgment pursuant to Rule 54(b) must satisfy certain criteria. First, the judgment must have the "requisite aspects of finality." Id. at 43 (citing Morrison-Knudsen Co. v. Archer, ___ ______________________________ 655 F.2d 962, 965 (9th Cir. 1981)). Second, the district court must have made its decision to certify a final judgment while viewing all claims and parties in perspective. See id. (citing ___ ___ Pahlavi v. Palandjian, 744 F.2d 902, 904 n.5 (1st Cir. 1984), and _____________________ quoting Curtiss-Wright Corp. v. General Elec. Co., 446 U.S. 1, 10 _________________________________________ (1980)). Third, we examine the trial judge's "assessment of the equities" regarding any justifiable reasons for delay. Spiegel, _______ 843 F.2d at 43. This process is necessarily case-specific and requires an assessment of the entire litigation and an analysis -17- 17 of factors which suggest reasons to relax the usual prohibition against piecemeal appellate review.10 "If the district court has fulfilled its responsibility of enlightening us as to the basis for certification . . . then we give 'substantial deference' to the court's exercise of its discretion." Id. __ (quoting Pahlavi, 744 F.2d at 904 n.5). _______ B. Discussion B. Discussion __________ 1. Two-Pronged Threshold Test 1. Two-Pronged Threshold Test __________________________ The first prong of our inquiry is whether judgment on Count III, alone, satisfies the requirement of finality. Count III of the Trustee's first amended complaint simply asserts an amount of money owed to the bankrupt estate by the Muratore Defendants. There can be little doubt that entering judgment on Count III provides the requisite quantum of finality. See ___ Spiegel, 843 F.2d at 43. If a certain sum of money is deemed to _______ be owed to a bankrupt estate, a decision that recognizes the debt and orders payment is a coherent and final disposition. The debt is either owed or it is not. ____________________ 10Factors analyzed by other courts in evaluating Rule 54(b) motions include (1) the relationship between the adjudicated and non-adjudicated claims, (2) the possibility that the need for review might be mooted by future developments in the district court, (3) the possibility that the same issue might have to be considered again by the reviewing court, (4) the presence or absence of a claim or counterclaim which might result in a setoff against the judgment which is to be made final, (5) miscellaneous considerations such as delay, economic and solvency considerations, efficiency, frivolity of competing claims, and expense. Allis-Chalmers Corp. v. Philadelphia Electric Co., 521 _________________________________________________ F.2d 360, 364 (3d Cir. 1975). -18- 18 Second, we verify whether the trial judge considered the interrelatedness of claims and the overall context of the case before him. See Spiegel, 843 F.2d at 43 (citing Pahlavi, ___ _______ _______ 744 F.2d at 904 n.5, and quoting Curtiss-Wright Corp., 446 U.S. _____________________ at 10). Here, the district court observed that a grant of partial summary judgment would cause the other counts to become moot, since the effect of the satisfaction of the Count III judgment would be to deplete the Muratore Defendants of their assets. The district court was explicitly referring to a contextual analysis. The district judge found that the assets of defendants are not sufficient to satisfy any further money claims. Thus, we hold that the second Rule 54(b) criterion was met when the district judge contemplated his action pertaining to Count III with a view to the other five counts and not in an abstract or myopic fashion. 2. Equities 2. Equities ________ Moving to the heart of this analysis, we examine whether the trial judge abused his discretion in determining that there was "no just reason for delay," Fed. R. Civ. P. 54(b), in light of the futility of the defendants' claims regarding reductions in the amount of the debt and the time-sensitive position of the Trustee and debenture holders.11 ____________________ 11An additional requirement for a proper certification is that the district judge must have made an "express direction for the entry of judgment." Fed. R. Civ. P. 54(b). This requirement was obviously met by the judge's oral and written directions. -19- 19 In the usual case, if there is a possibility of a later setoff of a money debt, Rule 54(b) certification of the debt would be improper because of the inefficient and inequitable result which would occur if one party were allowed to collect money which may have to be paid back to the other party when the remaining litigation is completed. Pahlavi, 744 F.2d at 904. _______ However, that is not the case here. No setoff or reduction of the Muratore Defendants' debt could be allowed as a matter of law. The claimed reductions relating to the transferred property could not be applied to reduce the money debt. The amount allegedly owed by Columbus Mortgage for wages and rent cannot be setoff because the fiduciary relationship between the two parties renders the debts non-mutual. Here then, we do not face a situation where the Muratore Defendants will pay Columbus Mortgage only to have Columbus Mortgage return the money when the remaining claims are decided. Rather, the Muratore Defendants will have to join the other unsecured creditors and proceed through the Bankruptcy Court in an attempt to recover any amount allegedly owed by Columbus Mortgage. The claimed setoffs present no just reason for delay. The district court determined that certification was proper because the Trustee and debenture holders would be harmed with the postponement of any appeal. The trial court, in exercising its discretion in the Rule 54(b) context, may take time and value into consideration in finding delay unreasonable, particularly in a case of failure to meet basic fiduciary -20- 20 responsibilities. Cf. Curtiss-Wright Corp., 446 U.S. 1 ___ ______________________ (consideration of time-value of money). While there is an economic preference for all claims in a particular case to move to the appeal stage together, a demonstration of clear injustice or hardship resulting from delaying a final judgment on a particular question may justify certification. Since the district court in the instant case considered the appropriate criteria in a reasonable and coherent manner, "we conclude that [the court] did not abuse its discretion . . . ." Curtiss-Wright ______________ Corp., 446 U.S. at 12; see Spiegel, 843 F.2d 38; see also Pierce _____ ___ _______ _________ ______ v. Underwood, 487 U.S. 552, 562 (1988). There was "no just _____________ reason for delay." Fed. R. Civ. P. 54(b). -21- 21 IV. IV. Conclusion Conclusion __________ We hold that there was no genuine dispute of material fact concerning the district court's calculation of the debt owed by the Muratore Defendants to Columbus Mortgage and its Trustee in the amount of $2,146,034.24. Fed. R. Civ. P. 56(c). The attempt to satisfy the debt through a transfer of real estate was unavailing because there is no evidence of an arrangement between the parties whereby real estate conveyances were to be considered payments on the outstanding debt. No reduction of the debt by funds related to the properties can be granted, because the property itself was not a repayment for the loans made to the Muratore Defendants. Because defendants created the loans in violation of the fiduciary duty owed to the plaintiff, no setoff for other alleged debts owed by plaintiff to defendants is available. Furthermore, the cash payments on the debt were incorrectly applied to the principal rather than the interest, and therefore the sum calculated by the district court was correct. We have examined the record in the light most favorable to defendants, but we are unwilling to go further and take the leaps of faith suggested by the Muratore Defendants. Finally, we hold that entry of final judgment on Count III pursuant to Rule 54(b) was well within the sound discretion of the district court. Fed. R. Civ. P. 54(b). We, therefore, affirm the district affirm ______ court's summary judgment on Count III. -22- 22