In re AERO–FASTENER, INC., Debtor.

AERO–FASTENER, INC., Plaintiff,

v.

SIERRACIN CORPORATION, Defendant.

Bankruptcy No. 93–40107.
Adv. No. 93–4182.

United States Bankruptcy Court,
D. Massachusetts.

Dec. 30, 1994.

Louis S. Robin, Longmeadow, MA, for debtor.

David J. Noonan, Trustee.

L. Jed Berliner, Springfield, MA, for Sierracin Corp.

## MEMORANDUM OF DECISION

HENRY J. BOROFF, Bankruptcy Judge.

Before the Court for determination are several motions arising out of a "Complaint for Avoidance or Preferential Transfers, Breach of Agreement, and Breach of Contract/Distribution Agreement" (the "Complaint") filed by the Debtor, Aero–Fastener, Inc. (the "Debtor" or "Plaintiff") against Sierracin Corporation ("Sierracin" or "Defendant").

## I. FACTS

The following recitation of facts surrounding the instant dispute between the Debtor and Sierracin are either not contested or not properly controverted by Sierracin as is set forth below.

The Debtor is a seller of aircraft parts. Prior to the filing of the Chapter 11 case herein, the Debtor and Sierracin, a manufacturer of aircraft parts, had a distribution agreement concerning the purchase and sale of parts inventory for the Debtor's business (the "Distribution Agreement"). Over a two year period commencing in November of 1990, the Debtor purchased a significant amount of inventory from Sierracin for resale to other manufacturers. However, during the period of January 1, 1992 to September 1, 1992, the Debtor defaulted in payment as required by the Distribution Agreement and, as of December of 1992, owed Sierracin the sum of approximately $108,000.00.

In December of 1992, Sierracin commenced an action, entitled *Sierracin Corporation v. Aero–Fasteners, Inc.* in the Commonwealth of Massachusetts District Court Department for the Springfield Division (the "State Court Action"). The complaint sought payment of $118,182.13 for goods sold and delivered by Sierracin to the Debtor, pursuant to the Distribution Agreement. Sierracin also sought the imposition of a bulk attachment of the assets of the Debtor.

At or about the time that the State Court Action was filed, the Debtor was suffering from further financial difficulties. Most notably, United States Trust Company, the Debtor's source of financing, "froze" the Debtor's line of credit, forcing the Debtor to significantly reduce its operations. As a result of the loss of financing, the Debtor was unable to purchase inventory for resale, or otherwise to pay its debts.

Notwithstanding the foregoing difficulties, the Debtor and Sierracin were able to settle the State Court Action, prior to action on the request for bulk attachment, by executing an "Agreement and Release" (the "Settlement Agreement")[1] on January 8, 1993. Pursuant

---

1. The Settlement Agreement provides in relevant part:

WHEREAS, AERO–FASTENERS, INC. wishes to make full payment for all goods sold and delivered and for which invoices are due and owing, and wishes to obtain additional goods for pre-sold orders; and

WHEREAS, SIERRACIN CORPORATION wishes to be paid for all goods sold and delivered, as well as interest, fees and costs of collection, the parties agree as follows: ...

to the terms of the Settlement Agreement, the Debtor agreed to ship goods valued at $124,691.22 to Sierracin from the Debtor's inventory and to release Sierracin from any other obligations (including the Debtor's claim against Sierracin for alleged "wrongful

**2. Agreement between the Parties.**

SIERRACIN has previously shipped goods to AERO–FASTENERS. AERO–FASTENERS agrees to return specific parts of SIERRACIN's manufacture to SIERRACIN, equal in value (as valued by Sierracin's invoicing to AERO–FASTENER) to the total amount in Paragraph 3 by shipment no later than January 8, 1993[.] ... The total value of the parts returned shall include the amount due for all invoices, less the amount of any credits due, plus interest, plus the value of parts to be purchased as specified under Paragraph 4, plus a 10% restocking charge for all parts returned, plus attorneys fees for collection of this debt. All parts shall be shipped back at AERO–FASTENERS' expense, f.o.b. the Sierracin Plant in California.

SIERRACIN agrees, in full satisfaction of the debt owed by AERO–FASTENERS, to accept return of specific SIERRACIN manufactured parts in good condition whose invoiced prices total the amount specified in the accounting of Paragraph 3.

SIERRACIN further agrees, within 24 hours of receipt of the aforementioned parts, to ship to AERO–FASTENERS specified parts noted in Paragraph 4. SIERRACIN may make earlier shipments at its discretion, but it is not obligated to do so.

**3. Accounting of Amounts Due.**

The parties agree that the following amounts are due and owing by AERO–FASTENERS to SIERRACIN:

| | |
|---|---|
| AMOUNT OWED–PAST DUE INVOICE/INTEREST | $108,628.38 |
| NEW SHIPMENT–PARTS | $38,470.45 |
| TOTAL | $147,098.83 |
| | |
| 10% RESTOCKING FEE | $14,709.88 |
| ATTORNEY FEES (Approx.) | $5,200.00 |
| | |
| TOTAL DUE IN RETURN PARTS | $167,008.71 |

AERO–FASTENERS shall reimburse SIERRACIN in cash within 30 days of the signing of this Agreement for any attorneys fees and expenses not yet accounted for under this Agreement.

**4. Further Shipment to Aero–Fasteners, Inc.**

The parties agree that SIERRACIN will sell and ship the following parts to AERO–FASTENERS within 24 hours of receipt in good order of all parts specified in this Agreement to be returned. Payment for this additional shipment is in kind in parts, plus a 10% premium for restocking, as specified in Paragraph 3 of the Agreement.

| PART NO. | QTY. | PO# | UNIT | TOTAL |
|---|---|---|---|---|
| H11007EO6 | 21 | 21544 | 61.81 | $ 1,298.01 |
| H11009–04(P) | 171 | 20990 | 62.79 | 10,737.09 |
| H11009–04(D) | 107 | 21738 | 44.69 | 4,781.83 |
| H110540–04 | 62 | 21548 | 72.77 | 4,511.74 |
| H9855–10 | 56 | 21736 | 133.47 | 7,474.32 |
| HH00200ATE06(TEO6) | 44 | 21542 | 82.98 | 3,651.12 |
| 2–02287W040406 | 41 | 41345 | 146.74 | 6,016.34 |
| TOTAL | | | | $ 38,470.45 |

. . .

**6. Mutual Releases of Obligations.**

Upon return in good order of all parts specified under this Agreement, and discharge of all duties hereunder, each party is hereby released from all known obligations to the other except as stated herein. This particularly includes without limitation all claims and potential claims of AERO–FASTENER against SIERRACIN for wrongful sales to AERO–FASTENERS' customers, but excludes SIERRACIN's parts warranty obligations....

See Exhibit "B" of the Complaint.

sales to Aero–Fastener's customers."). The amount of $124,691.22 was comprised of $108,628.38 for the agreed upon amount of the antecedent debt, a 10% restocking fee, and $5,200 in attorneys fees.

Also included in the Settlement Agreement was a provision which required Sierracin to ship to the Debtor new goods valued at $38,-470.45 in exchange for inventory to be returned to Sierracin in the amount of $38,-470.45, plus a ten (10%) per cent stocking charge. According to the Settlement Agreement, the goods to be sent from Sierracin to the Debtor were to be shipped to the Debtor within twenty-four (24) hours of receipt by Sierracin of the $38,470.45 goods to be returned from the Debtor to Sierracin.

Pursuant to the terms of the Settlement Agreement, the Debtor timely returned to Sierracin all parts specified in the Settlement Agreement. Those goods were shipped on January 8, 1993 from the Debtor's location in Westfield, Massachusetts, and received by the Sierracin on January 15, 1993 in Burbank, California. However, Sierracin did not ship any goods to the Debtor until *several* days after receiving its shipment from the Debtor. When Sierracin actually shipped the promised goods to the Debtor, it did not ship goods identified under the part numbers H11009–04(p) (171 pieces) and H11009–02(D) (107 pieces). Although the Debtor received some of the parts on January 25, 1993, the shipment (which did not include the entire order) was too late to fulfill a contract between the Debtor and the United States Government.

The execution of the Settlement Agreement and Sierracin's receipt of the goods pursuant to the terms of the Settlement Agreement occurred within the week preceding the filing of the instant Chapter 11 petition.

2. The Complaint included nine (9) counts: Count I (Request to Avoid and Return Preference); Count II (Damages for Failure to Deliver Goods); Count III (Breach of Agreement, and Breach of Contract/Distribution Agreement); Count IV (Breach of Implied Covenant of Good Faith and Fair Dealing); Count V (Intentional Interference with Prospective Business Advantage; Count VI (Intentional Interference with a Contract and/or Contractual Relations); Count VII (Conversion, Fraud and Conspiracy to Defraud); Count VIII (Massachusetts General Laws, Chapter 93A); Count IX (Equitable Subordination).

## II. PROCEDURAL HISTORY

On or around January 15, 1993, the Debtor filed a Chapter 11 petition in this Court. Approximately seven (7) months later, the Debtor commenced the above-captioned adversary proceeding [2] against Sierracin. Sierracin's Answer, filed on August 23, 1993, included a demand for a jury trial. At the Pre–Trial Conference on October 21, 1993, the parties submitted a Joint Pre–Trial Stipulation. In a Second Pre–Trial Order entered on October 21, 1993 by Chief Bankruptcy Judge James F. Queenan Jr., the Court ordered that a discovery deadline be set for May 1, 1994, and ordered the Debtor to file a motion for summary judgment on Counts I and II of the Complaint within sixty (60) days. Judge Queenan's order also provided that, after resolution of the "dispositive motions", the case would be transferred to the United States District Court.

Notwithstanding the sixty (60) day deadline set forth in Judge Queenan's Second Pre–Trial Order, not until March 1, 1994 did the Debtor file a motion for summary judgment on Count I (Avoidance of Preferential Transfers) and Count II (Breach of Agreement) together with an affidavit of James B. Avery, the Debtor's Treasurer (the "Avery Affidavit"). Sierracin responded by filing an opposition to the motion for summary judgment, *but without any supporting affidavits.* On April 28, 1994, this Court held a hearing on the Debtor's motion for summary judgment on Counts I and II of the Complaint.

At the hearing on its motion for summary judgment, the Debtor argued that summary judgment should be awarded on both Counts I and II because there were no genuine issues of material fact, and, on the further grounds that the nonmoving party, Sierracin, had failed to supply any affidavits in opposition to the Debtor's motion for summary judgment.

With respect to Count I (Avoidance of Preferential Transfers), the Debtor argued that the Debtor's satisfaction of the debt owed to Sierracin within ninety (90) days of the filing of the petition was a "casebook example of a preference." The Debtor asserted that it shipped approximately $165,000 worth of goods to Sierracin, which amount represented: (1) the $108,000 pre-existing debt, (2) the 10% restocking charge; (3) approximately $5,000 in legal fees; and (4) $38,000 worth of goods, including an additional 10% restocking charge. Of those amounts, the Debtor claimed that the $108,000 debt, plus the approximately $5,000 in legal fees and the 10% restocking charge[3] was clearly an antecedent debt.[4]

With respect to Count II (Breach of Agreement) of the Complaint, the Debtor asserted that Sierracin's failure to timely deliver the goods valued at approximately $38,000, within the twenty-four time period prescribed under the Settlement Agreement, caused the Debtor to lose approximately $21,728.03 it would have collected that on the United States government contract.

In opposition to the motion for summary judgment, Sierracin raised several arguments. Firstly, Sierracin asserted that its failure to supply affidavits in opposition to the Debtor's motion for summary judgement was not fatal because prevailing case law requires the Court to draw all inferences in favor of the nonmoving party. Although it did not supply any affidavits, Sierracin asserted that the *Debtor's* allegations presented genuine issues of material fact.

Secondly, with respect to the alleged voidable preference, Sierracin asserted that *all* of the described transfers comprised one contract that was not severable. More specifically, Sierracin claimed that at the time of the execution of the Settlement Agreement,

Sierracin took advantage of its bargaining position (because the Debtor could not find another supplier on an emergency basis) by requiring a premium price to be paid for the new contemporaneous consideration. Sierracin claimed that the right to do business with Sierracin, the only available supplier was itself new value, contemporaneously given. Furthermore, Sierracin found contemporaneous consideration given in its forbearance to go forward with its bulk attachment sought in the State Court Action.

Thirdly, with respect to Count II of the Complaint, Sierracin asserted that there was no breach of the Settlement Agreement because time was not of the essence in the agreement. Moreover, Sierracin also asserted that the measure of damages was inaccurate. It argued that the Debtor should have calculated damages on the basis of lost profits and not on the basis of the gross revenues of the lost sale.

After hearing the oral arguments, the Court granted summary judgment in favor of the Debtor on both Counts I and II.[5]

Approximately three months later, the Chapter 11 Trustee[6] (the "Trustee") filed a "Motion for Separate and Final Judgment as to Counts I and II" ("Motion for Separate and Final Judgment"). Sierracin responded by filing an objection and also filed a "Motion to Revise Order Granting Plaintiff's Motion for Summary Judgment" ("Motion to Revise"). Sierracin also filed a "Motion for Leave to File Supplements" and a request for expedited determination.[7] All of the above motions were heard in Springfield, Massachusetts on August 31, 1994. The parties were also given seven (7) days to submit further briefs on the issues raised in the above motions.

---

3. The total amount being sought under Count I is $124,691.22.

4. The $38,000 worth of goods shipped to Sierracin was not included in the Debtor's preference claim.

5. In its order dated April 28, 1994, the Court sanctioned the Debtor's counsel in the amount of $100.00 for failure to timely comply with Judge Queenan's Second Pre–Trial Order.

6. The Court ordered the appointment of a Chapter 11 Trustee on April 22, 1994 for reasons unrelated to this Adversary Proceeding.

7. At the hearing on August 31, 1994, the Court denied the Defendant's request for expedited determination on its "Motion for Leave to File Supplements."

## III. POSITIONS OF THE PARTIES

### A. The Trustee

Through his pleadings and oral arguments, the Trustee makes several arguments with respect to its Motion for Separate and Final Judgment. The Trustee makes various procedural arguments.

Firstly, the Trustee argues that Bankruptcy Rule 7054 authorizes the Court to make a separate and final judgment on Counts I and II of the Complaint, notwithstanding the balance of counts which remain to be tried in District Court. The Trustee maintains that the entry of separate judgment is beneficial to both the Trustee and Sierracin because it enables the Trustee to commence collection activity on the judgment, and it enables Sierracin to pursue its appellate rights.

Secondly, with respect to Sierracin's argument that the entry of a separate and final judgment spawns piecemeal litigation, the Trustee asserts that it was the intention of the Court (evidenced by Judge Queenan's Second Pre-Trial Order) to avoid prolonging the litigation of certain issues capable of resolution. By entering a separate and final judgment with respect to Counts I and II (which the Trustee alleges are independent from the remaining counts), there would be no need to retry the issues raised in these Counts in the District Court litigation. The Trustee further argues that entry of a final and separate order for judgment is in conformity with the policy of conserving judicial resources.

With respect to Sierracin's Motion to Revise, the Trustee argues that the motion should be disallowed because Sierracin has failed to present any valid grounds for reconsideration or revision of the judgment. Specifically, the Trustee emphasizes that the Motion for Revision does not allege any manifest errors of law or newly discovered facts. The Trustee maintains that Sierracin has inappropriately attempted to raise new arguments and issues which either should have been raised at the hearing on summary judgment or in a *timely* motion for reconsideration.

Finally, the Trustee asserts that the merits of the motion for summary judgment should not be reopened for argument as the Court properly applied the standard of required proof on a motion for summary judgment. Specifically, the Trustee argues that Rule 56(e) of the Federal Rules of Civil Procedure, as made applicable to these proceedings by Bankruptcy Rule 7056, not only requires the adverse party to supply opposing affidavits demonstrating a genuine issue for trial, but also provides that an adverse party may not rest upon the mere allegations or denials set forth in a pleading filed in opposition to the motion.

The Trustee also makes arguments as to the merits of the dispute. The Trustee states that, even if the Court were to reconsider its order granting summary judgment, the legal arguments presented by Sierracin should not alter the conclusions of the Court's earlier ruling in favor of the Debtor on summary judgment.

With respect to Count I of the Complaint, the Trustee firstly reiterates that the transfer of the goods, which related to the amount set forth in the State Court Action including the restocking fee and the attorneys fees, was on account of an antecedent debt. Secondly, the Trustee rejects the notion that contemporaneous "new value" could consist of (1) the forbearance to go forward with a request for the imposition of a bulk attachment or (2) the intangible benefit of doing business with Sierracin at a time when the Debtor did not have any other available suppliers. Thirdly, the Trustee argues, that in accordance with 11 U.S.C. § 550, it is appropriate to compel the return of value rather than goods when the market value of the subject goods is readily ascertainable. The Trustee points out that because there is a liquidated assignable value of the goods transferred to Sierracin, that value should be credited to estate.

Regarding Count II, the Trustee notes that some of the goods were returned to Sierracin because they were not timely delivered according to the terms of the Settlement Agreement. The Trustee emphasizes that time was of the essence, the urgency of the delivery was known to Sierracin, and the Debtor lost the value of its contract with the

Government on account of the lateness of Sierracin's delivery. Moreover, the Trustee suggests that Sierracin actually benefitted from the transaction because approximately $15,000 worth of goods were subsequently returned by the Debtor to Sierracin.

Finally, the Trustee argues that attorneys fees should be awarded on the Debtor's behalf pursuant to Counts I and II.[8] The Trustee suggests that the award of attorneys fees is derived from the terms of the Settlement Agreement which contemplated the award of attorneys fees. The Trustee argues that because Sierracin was in a position to exact attorneys fees through the Settlement Agreement, the Debtor, similarly, should be entitled to attorneys fees which flowed from the consequences of Sierracin not performing its obligations under the Settlement Agreement.

### B. Sierracin

In opposition to the Trustee's Motion for Separate and Final Judgment, Sierracin asserts that entering a separate judgment on two of the nine counts would cause the proceeding to be severed and, therefore, would produce piecemeal litigation. Secondly, in its Motion to File Supplements, Sierracin asserts that the Court has no jurisdiction to enter a separate and final judgment on Count II because a pre-petition breach of contract claim is a non-core matter arising purely out of an issue of state law. Sierracin claims that it is not precluded from asserting this argument even at this late stage because subject matter jurisdiction can be raised at any stage of any proceeding.

In support of its Motion to Revise, Sierracin asserts that it is not seeking relief on the ground of newly discovered evidence, but rather on the ground of material errors of law committed by the Court. Firstly, it asserts that the Court entered summary judgment in favor of the Debtor erroneously because the moving party's affidavits (even though not controverted by Sierracin) failed to establish all the elements necessary to make out a claim under Count I and Count II. Sierracin asserts that in opposing the Debtor's motion for summary judgment, it could rely solely on moving party's affidavits and was entitled to all reasonable inferences drawn in its favor.

With respect to Count I, Sierracin asserts that the entire series of transfers between the Debtor and Sierracin comprised one comprehensive contract or agreement, and was designed to give contemporaneous new value to the Debtor pursuant to 11 U.S.C. § 547(c)(1). Sierracin asserts that the new value conferred on the Debtor was (1) Sierracin's forbearance of its prosecution of the state court bulk attachment motion and (2) the privilege of purchasing inventory from Sierracin at a time when the Debtor had no alternative supplier. Specifically, Sierracin asserts that the Debtor paid a premium price (consisting of the return of goods, restocking charge and attorneys fees) for the ability to return excess inventory for which it did not have an immediate buyer, and to pay for new goods (for which a buyer was readily available) with returned goods instead of cash. Sierracin argues that this inference could be reasonably drawn on the basis that the Debtor chose to return the goods to Sierracin instead of selling the goods for cash.

Sierracin next argues that if the Court determines that it properly ruled in favor of the Debtor on its preference claim, then it should be responsible only for returning the *goods* and not paying the value of the goods, pursuant to § 550. Sierracin emphasizes that § 550 requires turnover of "the property transferred or, if the court so orders, the value of such property." Sierracin asserts that in the absence of depreciation in the value of the goods, it should not be required to turnover *cash* to the Debtor. Sierracin claims that the Court should infer that the value of the goods had not depreciated from the fact that the goods remained in the Debtor's possession for a period of time before

---

8. The Motion for Separate and Final Judgment includes a request for the award of attorneys fees incurred with respect to the instant adversary proceeding. David J. Noonan, Counsel to the Chapter 11 Trustee, is seeking compensation in the amount of $2,296.00. Louis S. Robin, Esq., Counsel to the Debtor, is seeking compensation in the amount $3,497.50 (fees) and $115.50 (expenses).

they were returned to Sierracin pursuant to the terms of the Settlement Agreement.

Sierracin also argues that if any amount is awarded under Count I, it should be $108,628.38 and not $124,691.22 (plus attorneys fees). Sierracin asserts that the Springfield District Court complaint only demanded the amount of goods sold and delivered to the Debtor, and did not include a request for a 10% restocking fee or attorneys fees. Moreover, the Avery Affidavit (which alleges that $108,628.38 worth of excess inventory was transferred for the antecedent debt) permits the inference that the restocking fee and the attorneys fees were not included in the amount of the antecedent debt.

Finally, Sierracin asserts that the Debtor has not properly proven that Sierracin received more in the transaction than it would have received if the Debtor's estate was liquidated under Chapter 7.

With respect to Count II of the Complaint, Sierracin asserts that if the Court finds that the return of the goods was avoidable under § 547, then there was no consideration to support Sierracin's obligation to ship goods to the Debtor. Sierracin also claims that the Debtor incorrectly calculated damages under Count II. Firstly, Sierracin argues that the Debtor's damages should represent the lost profits resulting from the failure to timely ship goods instead of the amount of the entire resale contract price.[9] Secondly, Sierracin asserts that even if the Court were to consider the contract resale price as a measure of damages, the Debtor's request in the amount $21,728.03 does not correspond with the price orders listed in the cancellation documents attached to the Avery Affidavit.[10] Thirdly, Sierracin asserts that the Debtor is "double-dipping" by adding value to the dam-

ages incurred for the untimely delivery of goods even though the Debtor was able to return the goods to Sierracin.

The final argument raised by Sierracin relates to the request for an award of attorneys fees under Count I and II. Sierracin asserts that there is no case law to support the recovery of attorneys fees on the preference count or on the breach of contract count.[11]

The foregoing arguments present the following issues for determination: (1) whether the Court can enter a separate and final judgment on Counts I and II of the Complaint; (2) whether the Court properly entered summary judgment in favor of the moving party in the absence of opposing affidavits; (3) whether an intangible benefit can constitute "new value" for purposes of § 547; (4) whether the Court properly awarded the return of cash rather than the return of goods on account of the antecedent debt (which amount included the 10% restocking fee and attorneys fees) pursuant to § 550; (5) whether the Debtor properly calculated damages under Count II; and (6) whether Sierracin should be responsible for paying attorneys fees incurred in connection with this adversary proceeding by counsel for the Chapter 11 Trustee and counsel for the Debtor.

## IV. DISCUSSION

### A. *Motion for Separate and Final Judgment*

As discussed above, on April 28, 1994, this Court granted partial summary judgment to the Plaintiff on Counts I and II of the Complaint. The Trustee is seeking an order of final judgment on Counts I and II of the

---

9. In its "Supplement to Opposition to Motion for Entry of Separate Judgment", Sierracin asserts the lost profits would amount to approximately $6,084.21. This amount is derived from the contract price (as asserted by Sierracin) $21,603.13, less the cost of goods which were untimely shipped, $15,518.92.

10. Sierracin references the following documents: (1) cancellation document referencing government order in the amount of $6,697.23 (93 Jan 36 Amendment to Requisition/Purchase Reg. No. YPC91102000088);

(2) cancellation document referencing government order in the amount of $14,905.90 (93 Jan 26 Amendment to Requisition/Purchase Reg. No. YPC90302000018).
Sierracin asserts that the total is only $21,603.13 rather than $21,728.03 as asserted by the Debtor.

11. If the Court were to allow the award of attorneys fees, Sierracin indicates that it would assent to the fees requested by Debtor's counsel but raises concerns with Trustee David Noonan's fees.

Complaint, pursuant to Bankruptcy Rule 7054. Sierracin suggests that it is not appropriate for the to Court enter separate and final judgment because (1) the Court does not have jurisdiction to enter a separate and final judgment on Count II since the underlying claim (breach of contract) is a non-core matter which can not be finally adjudicated by the bankruptcy court, and (2) entering separate and final judgment on fewer than all of the Counts will produce piecemeal litigation since Counts I and II are not separate or independent from the remaining counts under the Complaint.

With respect to Sierracin's first argument, Sierracin argued at the hearing held on August 31, 1994 that (1) the bankruptcy court lacks "core" jurisdiction to render final judgment over Count II because the breach of contract claim is a non-core matter; and (2) Sierracin is not estopped to raise this argument since subject matter jurisdiction can be raised at any time during the proceeding.

Sierracin's argument begs a brief discussion of jurisdiction. The basic grant by Congress of subject matter jurisdiction in bankruptcy cases is found in 28 U.S.C. § 1334. Subsections (a) and (b) provide:

(a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.

(b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district court shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

28 U.S.C § 1334(a)–(b). While Congress conferred jurisdiction directly to the district court, it provided that any or all cases under Title 11 and any or all proceedings arising in or related to a case under Title 11 may be referred to the bankruptcy court. 28 U.S.C. § 157(a).[12]

The scope of the bankruptcy court's authority on a referred matter depends on whether the referred matter is a "core" proceeding or a "non-core" (or related) proceeding. In "core" proceedings, the bankruptcy judge may hear and determine the case and enter a final judgment. 28 U.S.C. § 157(b)(1).[13] In "non-core" proceedings, a bankruptcy judge may only hear and then submit proposed findings of fact and conclusions of law to the district court unless the parties otherwise consent. 28 U.S.C. § 157(c)(1)–(2).[14] Moreover, § 157(b)(3) provides that in every case "[t]he bankruptcy judge shall determine, on the judge's own motion or on the timely motion of a party, whether the proceeding is a core proceeding ... or is a proceeding that is otherwise related to a case under title 11." 28 U.S.C. § 157(b)(3).

The distinction between "core" and "non-core" matters does not affect the Court's subject matter jurisdiction to hear a

---

**12.** Section 157(a) of Title 28 provides:

(a) Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges of the district.
28 U.S.C. § 157(a).

**13.** Section 157(b)(1) provides:

Bankruptcy Judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title.
28 U.S.C. § 157(b)(1). The types of proceedings that are considered "core" proceedings are listed in 28 U.S.C. § 157(b)(2).

**14.** Section 157(c) provides:

(c)(1) A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11. In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected.
(c)(2) Notwithstanding the provisions of paragraph (1) of this subsection, the district court, with consent of all the parties to the proceeding, may refer a proceeding related to a case under title 11 to a bankruptcy judge to hear and determine and to enter appropriate orders and judgments, subject to review under section 158 of this title.
28 U.S.C. § 157(c).

matter. *See Treadway v. United Bank & Trust Co. (In re Treadway)*, 117 B.R. 76, 81 (Bankr.D.Vt.1990). Only if a matter is determined to be both non-core and non-related will the Court not have jurisdiction. *Id.* Accordingly, Sierracin's argument that the Court lacks subject matter jurisdiction to render a final judgment on Count II is misplaced. Sierracin is not really challenging the Court's jurisdiction to *hear* the matter; rather, it is challenging the Court's authority to render a final judgment over the matter. Therefore, Sierracin's argument rests on whether the Court has "core" or "non-core" jurisdiction over Count II.

A review of the pleadings is critical to this determination. In paragraph three (3) of the Complaint, the Plaintiff alleges "[t]his matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)." Sierracin's Answer, which also included a jury demand on "all issues so triable," responded to this allegation by stating that the averment did not state a fact to which a response was required. Also, at no time did the Court explicitly determine whether this matter was core, and at no time did either party move the Court to make such a determination.

The general rules of pleading in adversary proceedings are set forth in Bankruptcy Rule 7008. *See* Fed.R.Bankr.P. 7008. Bankruptcy Rule 7008(a) provides in relevant part:

> [i]n an adversary proceeding before a bankruptcy judge, the complaint, counterclaim, cross-claim, or third-party complaint shall contain a statement that the proceeding is core or non-core and, if non-core, that the pleader does not consent to entry of final orders or judgment by the bankruptcy judge.

Fed.R.Bankr.P. 7008. Federal Rule of Civil Procedure 8(d), made applicable to bankruptcy proceedings by Bankruptcy Rule 7008, provides "averments in a pleading to which a responsive pleading is required, other than those as the amount of damage, are admitted when not denied in the responsive pleading. Averments in a pleading to which no respon-

sive pleading is required or permitted shall be taken as denied or avoided." Fed. R.Civ.P. 8(d). Bankruptcy Rule 7012(b) similarly requires a responsive pleading to respond to allegations of "core" or "non-core" jurisdiction.

> A responsive pleading shall admit or deny an allegation that the proceeding is core or non-core. If the response is that the proceeding is non-core, it shall include a statement that the party does or does not consent to entry of final orders or judgment by the bankruptcy judge. In non-core proceedings final orders and judgments shall not be entered on the bankruptcy judge's order except with the express consent of the parties.

Fed.R.Bankr.P. 7012(b).

■ In this case, Sierracin's failure to admit or deny the Plaintiff's averment that the matter was a "core" proceeding is deemed an "admission" in accordance with general rules of pleading under Rule 8(d) of the Federal Rules of Civil Procedure. The Plaintiff's averment that the proceeding was "core" is not the kind of allegation to which no responsive pleading is required. In fact, such a responsive pleading is explicitly required under Bankruptcy Rule 7012(b). *See* Fed.R.Bankr.P. 7012(b). Moreover, Sierracin never objected to the bankruptcy court's exercise of "core" jurisdiction over Count II at the pre-trial conference [15] or at the hearing on summary judgment. Accordingly, the Court finds that Sierracin consented to the bankruptcy court's "core" jurisdiction over Count II, *see In re G.S.F. Corp.*, 938 F.2d 1467, 1476 (1st Cir.1991) (consent to bankruptcy court's jurisdiction over related matters need not be necessarily explicit and may be implied). Based on that consent and in accordance with § 157(b)(3), the Court hereby makes an explicit determination that it has "core" jurisdiction over Count II pursuant to § 157(b)(2).

■ Sierracin's second argument concerns the propriety of entering final judgment on fewer than all claims in an adversary pro-

---

15. Sierracin never filed a motion for reconsideration of Judge Queenan's decision, pursuant to his Second Pre–Trial Order of October 21, 1991, to hear the motion for summary judgment on Counts I and II and send the remaining counts up to District Court after the disposition of the summary judgment motion.

ceeding. It has been generally held that Rule 54(b) [16] of the Federal Rules of Civil Procedure, as made applicable to adversary proceedings by Bankruptcy Rule 7054, allows the Court to confer finality upon an order adjudicating fewer than all of the claims in an adversary proceeding. *See* Fed.R.Civ.P. 54(b). When the court directs the entry of a final judgment as to less than all of the claims or parties it must determine that there is no just reason for delay in entry of the judgment. *See Darr v. Muratore,* 8 F.3d 854, 862 (1st Cir.1993); *Section 1120(A)(1) Committee of Unsecured Creditors v. Interfirst Bank (In re Wood and Locker, Inc.),* 868 F.2d 139, 143 (5th Cir.1989). This determination is "largely discretionary, to be exercised in light of 'judicial administrative interests as well as the equities involved,' and giving weight to 'the historical federal policy against piecemeal appeals.'" *Id., quoting, Reiter v. Cooper,* —— U.S. ——, ——, 113 S.Ct. 1213, 1218, 122 L.Ed.2d 604 (1993) (citations omitted).

In the case of *Darr,* the First Circuit held that a Rule 54(b) certification must satisfy the following criteria: (1) the judgment must have the requisite aspects of finality; (2) the court must have made its decision to certify a final judgment while viewing all claims and parties in perspective; and (3) the court must assess the equities regarding justifiable reasons for delay. 8 F.3d at 862. This last consideration requires an analysis of the following factors: (1) the relationship between the adjudicated and non-adjudicated claims, (2) the possibility that the need for review

might be mooted by future developments in the district court, (3) the possibility that the same issue might have to be considered again by the reviewing court, (4) the presence or absence of a claim or counterclaim which might result in a setoff against the judgment which is to be made final, and (5) miscellaneous considerations such as delay, economic and solvency consideration, efficiency, frivolity of competing claims and expense. *Id., citing, Allis–Chalmers Corp. v. Philadelphia Electric Co.,* 521 F.2d 360, 364 (3d. Cir.1975).

■ In the instant case, Counts I and II present preference and breach of contract claims respectively, which relate to the State Court Action and subsequent Settlement Agreement. The remaining counts of the Complaint present claims which relate to Sierracin's alleged breach of various exclusivity provisions contained in the Distribution Agreement entered into by the Debtor and Sierracin. The remainder of the counts present claims (breach of implied covenant of good faith and fair dealing, intentional interference with prospective business advantage and contractual relations, conversion, fraud, conspiracy to defraud, equitable subordination, and violation of Chapter 93A) wholly unrelated to the issue of the alleged preference and breach of contract claims.

In view of the fact that Counts I and II present separate and distinct claims relative only to the State Court Action and the subsequent Settlement Agreement, this Court finds that entering final judgment on Counts I and II will not affect the adjudication of the

---

**16.** Federal Rule of Civil Procedure 54(b) provides:

When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry

of judgment adjudicating all the claims and the rights and liabilities of all the parties.

Fed.R.Civ.P. 54(b). Rule 54(b) is made applicable to bankruptcy proceedings by Bankruptcy Rule 7054. *See* Fed.R.Bankr.P. 7054. However, Bankruptcy Rule 7054 contains its own subdivision with respect to the matter of costs. Rule 7054(b) provides:

The court may allow costs to the prevailing party except when a statute of the United States or these rules otherwise provides. Costs against the United States, its officers and agencies shall be imposed only to the extent permitted by law. Costs may be taxed by the clerk on one day's notice; on motion served within five days thereafter, the action of the clerk may be reviewed by the court.

Fed.R.Bankr.P. 7054.

remaining counts under the Complaint, nor will any subsequent determination impact the judgment on Counts I and II. The possibility that the alleged preference and breach of contract (arising out of the State Court Action and Settlement Agreement) might have to be considered again by the reviewing court is also suspect in light of the very narrow issues of fact and law which are presented by Counts I and II. Although Sierracin's Answer asserts an affirmative defense claiming offset in attorneys fees in the amount of $747.50, it does not allege a counterclaim which might result in a setoff against the judgment on Counts I and II. Finally, this Court finds that (1) the economic benefit to the estate in allowing the Trustee to proceed with the collection process, (2) the potential risk of delay caused by the remaining lengthy litigation, and (3) the unlikely risk of piecemeal appeals, warrant the entry of separate and final judgment on Counts I and II of the Complaint pursuant to Rule 54(b) of the Federal Rules of Civil Procedure.

### B. Motion to Revise

Sierracin's Motion to Revise addresses the validity of the Court's entry of summary judgment on Counts I and II of the Complaint. The Trustee asserts that the Motion to Revise should be denied because (1) it is an untimely filed motion for reconsideration [17] and (2) it fails to present any valid assertion for reconsideration or revision of the judgment.

It is clear that the Motion to Revise is filed well beyond the time frame contemplated by Rule 7059. For this reason alone, the Motion to Revise should be disallowed. It is also well settled that a motion for reconsideration must establish either newly discovered evidence or a manifest error of fact or law. *See In re Wedgestone Financial,* 142 B.R. 7, 8 (Bankr.D.Mass. 1992); *In re Mortgage Investors Corp.,* 136 B.R. 592, 598 (Bankr.D.Mass.1992). Sierracin's Motion to Revise asserts that summary judgment was granted in error. Firstly, Sierracin asserts that it was improper for the Court to award summary judgment on the basis of Sierracin's failure to supply opposing affidavits. Secondly, Sierracin asserts that the Debtor failed to meet its burden of establishing all of the elements of its claims under Counts I and II.

The Court finds that the arguments contained in the Motion to Revise present issues which (1) were already raised and considered at the hearing on summary judgment or (2) should have been raised at the hearing on summary judgment. Judge Hillman astutely commented in the *Wedgestone* case that "initial arguments are not to be treated as a dress rehearsal for a second attempt to prevail on the same matter." 142 B.R. at 8. Accordingly, the Motion to Revise should be denied on the grounds that it improperly seeks to reargue the merits of the Debtor's motion for summary judgment.

Even if the Court were to entertain the arguments set forth in the Motion to Revise, the Court would not revise its order granting summary judgment on Counts I and II.

### i. The Standard for Summary Judgment

Firstly, Sierracin asserts that the Court improperly awarded summary judgment to the Debtor, notwithstanding Sierracin's failure to provide opposing affidavits, because (1) the Debtor's motion and the Avery Affidavit demonstrated that there were material issues of fact, and (2) the Debtor failed to establish all the elements necessary to make out a claim under Count I and Count II. Sierracin asserts that in opposing the Debtor's motion for summary judgment, it could rely solely on moving party's affidavits, and it was entitled to all reasonable inferences drawn in its favor.

The Court turns to Rule 56(e) of the Federal Rules of Civil Procedure, made applicable to adversary proceedings pursuant to Bankruptcy Rule 7056, which explicitly provides in part:

(e) **Form of Affidavits; Further Testimony; Defense Required.** Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such

---

17. Rule 59(e) of the Federal Rules of Civil Procedure, made applicable to adversary proceedings pursuant to Bankruptcy Rule 7059, provides "[a] motion to alter or amend the judgment shall be served not later than 10 days after entry of the judgment." Fed.R.Civ.P. 59(e).

facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.... When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed.R.Civ.P. 56(e). The statute clearly indicates that the nonmoving party can not successfully oppose a motion for summary judgment by resting on mere allegations or denials of the adverse party's pleading. In *Celotex Corp. v. Catrett,* the Supreme Court stated that "Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), *except the mere pleadings themselves,* and it is from this list that one would normally expect the nonmoving party to make the showing to which we have referred." 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (emphasis supplied).

 Sierracin asserts in its Motion to Revise that Rule 56(e) does not alter the accepted doctrine that inferences drawn from facts contained in the moving party's motion must be viewed in the light most favorable to the party opposing the motion. Moreover, Sierracin asserts that the *Celotex* opinion stated quite clearly that even a moving party need not come forward with affidavits so long as the district court is convinced that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any" show that there is no genuine issue for trial and that the moving party is entitled to judgment as a matter of law.

 Sierracin is correct with respect to both assertions but fails to acknowledge that the *dispute* which it seeks to raise is raised only in its pleadings. The Avery Affidavit, together with the uncontested facts, are sufficient to make out the Debtor's case.

It is only in the context of the "spin" which Sierracin asserts upon the facts that the disputed facts arise. And without the benefit of its own affidavit, Sierracin is not entitled to "spin" the facts using arguments presented in its pleadings alone. There is no question that the Court is obliged to view all of the facts in the light most favorable to the non-moving party, drawing all reasonable inferences in favor of that party as well. This requirement, however, does not mean that the nonmoving party can rest upon the allegations contained in its pleadings in defense of a motion for summary judgment. *After Six, Inc. v. Abraham Zion Corp. (In re After Six, Inc.),* 167 B.R. 35, 43 (E.D.Pa.1994), *aff'd,* 1994 WL 125219 (E.D.Pa. April 12, 1994). Judge Joyner, in *In re After Six, Inc.,* summarized Rule 56(e) as follows:

> [W]hile the moving party bears the initial burden of demonstrating the absence of genuine issues of material fact, the nonmovant must then establish the existence of its case. (citations omitted). As to any essential factual element of its claim on which the nonmovant would bear the burden of proof at trial, its failure to come forward with sufficient evidence to generate a trialworthy issue warrants summary judgment for the nonmoving party.

167 B.R. at 44, *citing, Ralar Distributors, Inc. v. Rubbermaid, Inc. (In re Ralar Distributors, Inc.),* 4 F.3d 62, 67 (1st Cir.1993).

Furthermore, while the Supreme Court in *Celotex* indicated that the nonmoving party may rely solely on depositions, answers to interrogatories and admissions on file, it also unequivocally stated that the nonmoving party may not rely on pleadings themselves. 477 U.S. at 323, 106 S.Ct. at 2552–53. The Supreme Court emphasized that "[o]ne of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses." *Id.* at 323–24, 106 S.Ct. at 2553.

It is clear from the prevailing case law that Sierracin, in relying on its pleadings alone, failed to meet its burden of coming forward with sufficient evidence to generate a genuine issue for trial. Assuming that the Plaintiff's motion established that summary judgment should be awarded on both Counts I

and II, the Court acted appropriately pursuant to Rule 56(e) of the Federal Rules of Civil Procedure.

### ii. Count I (Preference)

With respect to Count I, Sierracin asserts that the entire series of transfers between the Debtor and Sierracin comprised one comprehensive contract or agreement, and was designed to be a contemporaneous exchange for new value given to the debtor. Sierracin asserts that the new value was essentially the privilege of purchasing inventory from Sierracin at a time when the Debtor had no alternative supplier. Before addressing Sierracin's "new value" defense pursuant to § 547(c)(1), the Court must first determine whether the elements of a preferential transfer were satisfied pursuant to 11 U.S.C. § 547(b).[18]

It is undisputed that the transfer of goods (valued at $106,628.38) to Sierracin was made to and for the benefit of Sierracin, a creditor of the Debtor. *See* 11 U.S.C. § 547(b)(1).

■ Furthermore, the Court finds that the transfer of those goods was made for and on account of an antecedent debt owed by the Debtor to Sierracin. *See* 11 U.S.C. § 547(b)(2). There is no dispute that the Debtor transferred the goods to Sierracin pursuant to the Settlement Agreement. There is also no dispute that the Settlement Agreement was executed by the parties to settle the State Court Action commenced by Sierracin against the Debtor for collection of monies due on account of goods sold and delivered to the Debtor. Accordingly, the material facts indicate that the transfer of goods was clearly on account of the antecedent debt owed by the Debtor to Sierracin for unpaid goods.

There is no dispute that the transfer occurred within 90 days of the filing of the petition. *See* 11 U.S.C. § 547(b)(3). The goods were shipped by the Debtor on January 8, 1993; the Debtor filed its Chapter 11 petition on January 15, 1993.

The Avery Affidavit indicates that the Debtor was insolvent at the time of the transfer of goods to Sierracin as the value of the Debtor's assets was less than the amount of all of its the debts. *See* 11 U.S.C. § 547(b)(4); *see also Foley v. Briden (In re Arrowhead Gardens, Inc.),* 32 B.R. 296, 299 (Bankr.D.Mass.1983), *aff'd,* 776 F.2d 379 (1st Cir.1985) (insolvency is determined by traditional balance sheet test).

■ Finally, Sierracin received more in the transaction than it would have received if the Debtor's estate was liquidated in a Chapter 7. *See* 11 U.S.C. § 547(b)(5). Sierracin asserts that the Debtor has not properly proven this element pursuant to § 547(b)(5). Sierracin argues that it would still have approximately $38,000 worth of goods if the transfer had not occurred. Sierracin also argues that the cost value rather than the invoice price should be utilized to determine whether it received more on account of the alleged preference than it would in Chapter 7, and that the Debtor has failed to produce evidence of the cost of goods. This Court finds, however, that the transfer of the $38,000 worth of goods to the Debtor (although less than $38,000 worth of goods were actually transferred to the Debtor) was not part of the alleged preferential transfer. Also, the Court accepts the invoice value of the goods ($108,628.38) as it was not properly disputed by Sierracin and can be properly utilized for determining value for purposes of § 547(b)(5). Finally, in view of the Avery

---

18. Section 547(b) provides:

Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—
(1) to or for the benefit of a creditor
(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
(3) made while the debtor was insolvent;
(4) made—
(A) on or within 90 days before the date of the filing of the petition; or

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider;
(5) that enables such creditor to receive more than such creditor would receive if—
(A) the case were a case under chapter 7 of this title;
(B) the transfer had not been made; and
(C) such creditor received payment of such debt to the extent provided by the provisions of this title.
11 U.S.C. § 547(b).

Affidavit which indicates that at the time of the transfer the value of the assets were less than the amount of all debts, and, in view of the fact that Sierracin was an unsecured creditor, the Court is satisfied that Sierracin would have received less than the full amount of its debt if the case converted to Chapter 7.

Accordingly, the Court finds that elements of § 547(b) are satisfied.

Sierracin's next argues that the entire series of transfers between the Debtor and Sierracin was designed to give "new value" to the Debtor. The "new value" conferred on the Debtor was (1) the Debtor's ability to conduct business with Sierracin at a time when the Debtor had no alternative supplier, and (1) Sierracin's forbearance of going forward on its bulk attachment motion in the State Court Action.

 Although Sierracin's first argument is theoretically enticing, the Court does not believe that the definition of "new value" extends to an intangible right or benefit pursuant to 11 U.S.C. § 547(c)(1).[19] The definition of "new value" is set forth under § 547(a)(2):

> (2) "new value" means money or money's worth in goods, services, or new credit, or release by a transferee of property previously transferred to such transferee in a transaction that is neither void nor voidable by the debtor or the trustee under any applicable law, including proceeds of such property, but does not include an obligation substituted for an existing obligation[.]

11 U.S.C. § 547(a)(2). The legislative history suggests that the term was defined because Congress intended "new value" to have its ordinary meaning to avoid any uncertainty or confusion surrounding the terms. H.R.Rep. No. 595, 95th Cong., 1st Sess. 372, *reprinted in* 1978 U.S.C.C.A.N. 5787, 5963, 6328. Moreover, the use of the term "means" rather than the word "includes" under § 547(a)(2) suggests that the definition of

"new value" is exclusive and not open-ended. *Durant's Rental Center, Inc. v. United Truck Leasing, Inc. (In re Durant's Rental Center, Inc.),* 116 B.R. 362, 365 (Bankr.D.Conn.1990); *Simon v. Engineered Protection Systems, Inc. (In re Hatfield Electric Co.),* 91 B.R. 782, 784–85 (N.D.Ohio 1988).

A vast majority of courts agree that "new value" for purposes of § 547 must be something of tangible economic value. *See Gulf Oil Corp. v. Fuel Oil Supply & Terminaling, Inc. (Matter of Fuel Oil Supply & Terminaling, Inc.),* 837 F.2d 224, 229–31 (5th Cir. 1988); *In re Hatfield Electric Co.,* 91 B.R. at 786; *Fredman v. Milchem, Inc. (In re Nucorp Energy, Inc.),* 80 B.R. 517, 519 (Bankr. S.D.Cal.1987), *aff'd,* 902 F.2d 729 (9th Cir. 1990) ("the inquiry is whether the estate received something with economic value"); *see also Charisma Investment Co. v. Airport Systems, Inc. (In re Jet Florida System, Inc.),* 841 F.2d 1082, 1084 (11th Cir.1988) (consideration fitting the definition of "new value" requires receipt by the debtor of a material benefit).

In support of its argument that "new value" can constitute an intangible benefit, Sierracin relies on a recent Fifth Circuit decision, *Butler Aviation International, Inc. v. Whyte (In re Fairchild Aircraft Corp.),* 6 F.3d 1119 (5th Cir.1993), in which that court held that a Chapter 11 debtor-aircraft manufacturer received "reasonably equivalent value" pursuant to 11 U.S.C. § 548(a)(2)(A) for payments made to a supplier for fuel supplied to the debtor's affiliate commuter airline. Because the debtor considered its financially troubled affiliate airline to be a prime potential customer and potential conduit for establishing an exclusive relationship between the debtor and USAir, the debtor paid for fuel to maintain the operations of the affiliate airline.

In reaching the holding that the debtor realized a "reasonably equivalent value" by maintaining the operations of the affiliate, the Fifth Circuit vehemently rejected the

---

**19.** Section 547(c)(1) provides:
(c) The trustee may not avoid under this section a transfer—
(1) to the extent that such transfer was
(A) intended by the debtor and the creditor to or for whose benefit such transfer was

made to be a contemporaneous exchange for new value given to the debtor; and
(B) in fact a substantially contemporaneous exchange[.]
11 U.S.C. § 547(c)(1).

notion that the value of an investment for purposes of § 548 should not be considered unless it actually yields a reward. 6 F.3d at 1126. The court opined:

> The narrow "realized property" approach value advanced by [fiscal agent] finds no approbation in the law. Rather the recognized test is whether the investment conferred an economic benefit on the debtor; which benefit is appropriately valued as of the time the investment was made. Courts have considered such indirect financial effects as, for example, the synergy realized from two joining enterprises, the increase in a credit line, and the increased monetary "float" resulting from guarantying the loans of another, as constituting value under § 548.

6 F.3d at 1127 (footnotes omitted).

 While the *Fairchild* decision certainly broadens the perspective of fraudulent transfer analysis, this Court, however, is unconvinced that the *Fairchild* decision actually alters the basic definition of "new value" for purposes of § 547(c)(1). In fact, the definition of "value" for purposes of § 548 is manifestly broader than the definition of "new value" for purposes of § 547. "Value" under § 548 means "property, or satisfaction or securing of a present or antecedent debt of the debtor, but does not include an unperformed promise to furnish support to the debtor or to a relative of the debtor." 11 U.S.C. § 548(d)(2)(A). On the other hand, "new value", under § 547, means *money* or *money's worth* in goods, services, or new credit. *See* 11 U.S.C. § 547(a)(2). This Court believes that the definition of "new value" under § 547 demands a more exacting or rigid measure of benefit conferred on the debtor and does not contemplate the inclusion of esoteric or intangible benefits within the scope of its meaning under § 547.

 Moreover, a creditor relying on § 547(c)(1) must show that the value given for the transfer of the debtor's property must actually and in real terms enhance the worth of the debtor's estate so as to offset the reduction in the estate that the transfer

caused. *See In re Hatfield Electric Co.*, 91 B.R. at 785; *In re Finelli Jewelry Co., Inc.*, 79 B.R. 521, 522 (Bankr.D.R.I.1987) (a creditor seeking the protection of § 547(c)(1) must prove that the value given in a contemporaneous exchange is the approximate worth of the asset transferred). As indicated above, the definition of "new value" requires a *specific* dollar valuation of the "new value"—the money's worth—that the debtor received in exchange. *See Jet Florida, Inc. v. American Airlines, Inc. (In re Jet Florida Systems, Inc.)*, 861 F.2d 1555, 1558 (11th Cir.1988) (pursuant to § 547(c)(1), a creditor must prove the specific valuation of the "money or money's worth in goods, services or new credit" that the debtor received as "new value" in the contemporaneous exchange).

 Sierracin claims that the value it conferred was the privilege of dealing with a unique supplier.[20] The Court believes that the value of the benefit conferred by Sierracin is at best ephemeral. It was not value in money or moneys worth. Accordingly, the Court finds that Sierracin has failed to sustain a defense in accordance with § 547(c)(1).

 Sierracin's second assertion is that "new value" is Sierracin's forbearance of the prosecution of the bulk attachment motion. The Court is not impressed by this argument given the plethora of cases which reject the forbearance of asserting legal rights as "new value" under § 547(c)(1). *See American Bank of Martin County v. Leasing Service Corp. (In re Air Conditioning, Inc. of Stuart)*, 845 F.2d 293, 298 (11th Cir.1988), *cert. denied*, 488 U.S. 993, 109 S.Ct. 557, 102 L.Ed.2d 584 (1988); *In re Jet Florida System, Inc.*, 841 F.2d 1082; *Drabkin v. A.I. Credit Corp.*, 800 F.2d 1153, 1158–59 (D.C.Cir.1986); *In re Thomas McKinnon Securities Inc.*, 125 B.R. 94, 97–98 (Bankr. S.D.N.Y.1991); *In re Nucorp Energy, Inc.*, 80 B.R. 517; *Matter of Installation Services, Inc.*, 101 B.R. 282, 285 (Bankr.N.D.Ala.1989); *Van Huffel Tube Corp. v. A & G Indus. (Matter of Van Huffel Tube Corp.)*, 74 B.R. 579, 587 (Bankr.N.D.Ohio 1987); *Bavely v.*

---

20. If Sierracin's view of § 547(c)(1) were correct, suppliers of unique merchandise would be

insulated from the provisions of § 547.

*Merchants Nat'l Bank (Matter of Lario)*, 36 B.R. 582, 584 (Bankr.S.D.Ohio 1983); *Matter of Duffy*, 3 B.R. 263, 265–66 (Bankr.S.D.N.Y. 1980). Accordingly, Sierracin's forbearance of going forward on its bulk attachment motion fails to qualify as contemporaneous "new value" for purposes of § 547(c)(1).

■ Sierracin next argues that if any amount is awarded under Count I, it should be $108,628.38 and not $124,691.22 (plus attorneys fees). Sierracin asserts that the Springfield District Court complaint only demanded judgment for the amount of goods sold and delivered to the Debtor, and did not include a request for a 10% restocking fee or attorneys fees. However, the restocking charge and attorneys fees are not independent of the preferential transfer. They are inextricably intertwined with the transfer. The Debtor can be made whole only if those funds are returned as well.

Sierracin finally argues that if the Court determines that it properly ruled in favor of the Debtor on Count I of the Complaint, then the Court should order the return of *goods* rather than the *cash* representing the value of the goods in accordance with 11 U.S.C. § 550.[21]

■ Section 550(a) provides in relevant part:

(a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section ... 547, ..., the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—

(1) the initial transferee of such transfer[.]

11 U.S.C. § 550(a). Section 550(a) is intended to restore the estate to the financial condition it would have enjoyed if the transfer had not occurred. *Morris v. Kansas Drywall Supply Company, Inc. (In re Classic Drywall, Inc.)*, 127 B.R. 874, 876 (D.Kan.1991); *Pritchard v. Brown (In re Brown)*, 118 B.R. 57, 60 (Bankr.N.D.Tex.1990); *Tidwell v. Chrysler Credit Corp. (Matter of Blackburn)*, 90 B.R. 569, 573 (Bankr.M.D.Ga.1987). However, since the Bankruptcy Code does not provide guidance on when the Court should order payment of the value of property rather than order the return of property itself, it is within the Court's discretion to make such a determination. *In re Classic Drywall, Inc.*, 127 B.R. at 877; *First Software Corp. v. Computer Associates Int'l, Inc. (In re First Software Corp.)*, 107 B.R. 417, 423 (D.Mass. 1989); *Gennrich v. Montana Sport U.S.A., Ltd. (In re International Ski Service, Inc.)*, 119 B.R. 654, 656 (Bankr.W.D.Wisc.1990); *Burtrum v. Laughlin (In re Laughlin)*, 18 B.R. 778, 781 (Bankr.W.D.Mo.1982).

■ The factors which the Court should consider in determining whether to order turnover of the property rather than payment of the value include whether the value of the property (1) is contested; (2) is not readily determinable; or (3) is not diminished by conversion or depreciation. *In re Classic Drywall, Inc.*, 127 B.R. at 877. Conversely, courts will generally permit the recovery of value if the value is readily determinable and a monetary award would work a savings to the estate. *Id.; In re International Ski Service, Inc.*, 119 B.R. at 659; *see also Drewes v. FM Da–Sota Elevator Co. (In re Da–Sota Elevator Co.)*, 939 F.2d 654, 655 n. 2 (8th Cir.1991) (court will not order the recovery of a wasting asset pursuant to § 550(a)); *In re First Software Corp.*, 107 B.R. at 423–24 ("When a debtor cannot be made whole by the return of property lost through an avoidable transfer because of depreciation in value of the property, the court may enter an award of money judgment

---

**21.** At the conclusion of the hearing on Plaintiff's Motion for Summary Judgment, counsel for Sierracin asked the Court for clarification on whether the Court, in awarding judgment to the Plaintiff on Count I of the Complaint, was ordering cash or goods to be returned to the Debtor. The Court indicated that it was ruling that the Motion for Summary Judgment was allowed and that, if Sierracin needed further clarification, it should file an appropriate motion. Sierracin has not requested clarification of the Court's order of April 28, 1994 in this respect. Instead, Sierracin's Motion to Revise assumes that the Court intended to order the return of cash rather than the return of goods on account of the preference. This Court, however, never made such a ruling. Accordingly, the Court shall clarify its prior order of April 28, 1994, and make a ruling in accordance with 11 U.S.C. § 550.

**140**

equal to the property's value as of the date of the petition.").

Moreover, the language of § 550(a) which includes the term "for the benefit of the estate" should also guide the court in exercising its discretion. *In re Classic Drywall, Inc.*, 127 B.R. at 877 ("[T]he recovery of the estate will be enlarged by eliminating both the expenses of administering a sale and the risk of obtaining a lower price at the sale.").

■ In this case, it is not contested that the Debtor had significantly reduced its operations prior to entering into the Settlement Agreement. Therefore, the Trustee's ability to sell returned goods is unclear. Sierracin has also failed to offer any evidence of the lack of diminution in the value of the property since the transfer, other than the unsupported conjecture that the goods must have held their value because a significant period of time lapsed between the original delivery of the goods to the Debtor and the execution of the Settlement Agreement. Finally, the Court is satisfied that the fair market value of the goods is readily determinable since Sierracin has not supplied any acceptable evidence contesting the value ($108,628.38) of the goods at the time they were transferred to Sierracin. Accordingly, the Court will order the return of the value of the goods, together with the restocking charge and attorney's fees, to the Debtor in the total amount of $124,691.22.

### iii. Count II (Breach of Contract)

■ Sierracin's Motion to Revise suggests that Sierracin's obligation to ship the goods under the Settlement Agreement was unsupported by consideration if the Court determines that the Debtor's transfer of goods to Sierracin is avoided pursuant to § 547. This argument is easily disposed of by the fact that, under the terms of the Settlement Agreement, the Debtor was obligated to ship approximately $38,470.45 worth of inventory to Sierracin (in addition to the goods representing the antecedent debt owed to Sierracin) in exchange for inventory to be returned in the amount of $38,470.45 plus a 10% restocking fee. The Court finds that the exchange of goods contemplated between the parties under the Settlement Agreement

was clearly supported by consideration as (1) there was clearly a bargained-for exchange between the parties, and (2) the consideration was adequate based on relatively equivalent values of goods exchanged by the parties. *See Restatement (Second) of Contracts,* §§ 71, 79 (1981).

Sierracin's argument also challenges the Debtor's calculation of damages for Sierracin's failure to timely deliver the goods in accordance with the Settlement Agreement. Sierracin asserts that damages should be measured on the basis of the Debtor's lost profit and not on the full resale contract price ($21,728.03).

■ It is a fundamental principle of contract law that the goal in the awarding of damages in a breach of contract action is to place the injured party in the same position that party would have enjoyed had the contract been performed. *F.A. Bartlett Tree Expert Co. v. Hartney,* 308 Mass. 407, 411, 32 N.E.2d 237, 240 (1941). If a party suing for breach of contract has sustained a loss as a result of the breach, and the loss is of such a nature that it was reasonably foreseeable by the parties or actually within their contemplation at the time the contract was entered into, then the loss may be recovered in an action for damages. *American Mechanical Corporation v. Union Machine Company of Lynn, Inc.,* 21 Mass.App.Ct. 97, 101, 485 N.E.2d 680, 683 (1985); *see Restatement (Second) of Contracts,* §§ 347, 351 (1981). Comment (b) of § 347 of the *Restatement (Second) of Contracts* indicates:

> The first element that must be estimated in attempting to fix a sum that will fairly represent the expectation interest is the loss in the value to the injured party of the other party's performance that is caused by the failure of, or deficiency in, that performance. If no performance is rendered, the loss in value caused by the breach is equal to the value that the performance would have had to the injured party.

*Restatement (Second) of Contracts,* § 347. cmt. b (1981). An illustration of this principle is provided:

A, a manufacturer, contracts to sell B, a dealer in used machinery, a used machine that B plans to resell. A repudiates and B is unable to obtain a similar machine elsewhere. Subject to the limitation stated in §§ 350–353, B's damages include the net profit that he would have made on the resale of the machine.

*Restatement (Second) of Contracts,* § 347. cmt. b, illus. 2 (1981).

■ Based on the foregoing, the Court is persuaded that the correct measure of damages in the instant contract action would be profit lost by the Debtor on its contract with the United States. The Debtor's offer of damages is the value of the retail contract price ($21,728.03). Sierracin asserts, *without supporting affidavits,* that the lost profits are not equivalent to the contract price.[22] However, the Court has only been presented with acceptable evidence on damages from the Debtor, and therefore, can not make the determination that the calculation of lost profit would not equal the price of the resale contract.

Sierracin's second argument with respect to damages suggests that the Debtor failed to offer evidence that it mitigated damages or demonstrate that mitigation of damages would have been unreasonable. Section 350 of the *Restatement (Second) of Contracts* provides:

(1) Except as stated in Subsection (2), damages are not recoverable for loss that the injured party could have avoided without undue risk, burden or humiliation.

(2) The injured party is not precluded from recovery by the rule stated in Subsection (1) to the extent that he has made reasonable efforts to avoid loss.

*Restatement (Second) of Contracts,* § 350 (1981).

The Court, however, does not have any proof that the damages resulting from the untimely delivery of goods were not mitigated by the Debtor. Again, Sierracin's suggestion that

the Debtor did not mitigate damages is unsupported by acceptable evidence.

Sierracin's final argument with respect to the calculation of damages asserts that the Debtor is "double-dipping" by adding value to the damages incurred for the untimely delivery of goods even though the Debtor was able to return the goods to Sierracin. The Court must also summarily reject this argument because it is unsupported by any evidence.

Based on the foregoing, the Court finds that damages in the amount $21,728.03 were properly awarded to the Debtor under Count II of the Complaint.

#### iv. Attorneys Fees

■ The final argument set forth in Sierracin's Motion to Revise objects to the Trustee's request for attorneys fees detailed in the Motion for Separate and Final Judgment. The Court agrees with Sierracin that there is no legal basis for recovery of attorneys fees under 11 U.S.C. § 547 or under contract law. The Trustee asserts that the award of attorneys fees is derived from the terms of the Settlement Agreement which contemplated the award of attorneys fees. This argument is an unjustified stretch given that the intent of the Debtor's preference action is to void the Settlement Agreement.

Accordingly, the Court hereby denies[23] the Trustee's request for award of attorneys fees incurred by Debtor's counsel ($3,497.50) and Trustee's counsel ($2,296.00). In accordance with Bankruptcy Rule 7054, the Court hereby allows the Trustee's request for costs in the amount of $105.00.

### V. CONCLUSION

Sierracin's Motion to Revise is denied. The Trustee's Motion for Separate and Final Judgment is allowed except that the Trustee's request for attorneys fees incurred by the Debtor's counsel and the Trustee's counsel is denied. A separate Order and Judg-

---

**22.** Sierracin's assertion that the contract price is actually $21,603.13 (rather than $21,728.03 as asserted by the Debtor) is also unsupported by an affidavit.

**23.** The Court is only making the determination that attorneys fees should not be included in the Final Judgment under Counts I and II. The Trustee may seek compensation from the estate by filing an appropriate fee application.

ment will issue in conformity with this memorandum of decision.

## JUDGMENT

For the reasons set forth in the separate Memorandum of Decision, the Court hereby enters final judgment, pursuant Bankruptcy Rule 7054(b), on Counts I and II of the Complaint. Accordingly, the above-named Plaintiff is awarded judgment on Count I in the amount of $124,691.22, and on Count II in the amount of $21,728.03, together with interest at the statutory rate from the date of the filing of the Complaint. The Plaintiff is also awarded costs in the amount of $105.00.

## ORDER

For the reasons set forth in the separate Memorandum of Decision, the Court hereby denies Sierracin's Motion to Revise Order Granting Plaintiff's Motion for Summary Judgment. Sierracin's Motion for Leave to File Supplements is granted. The Trustee's Motion for Separate and Final Judgment is allowed except that the Trustee's request for attorneys fees incurred by the Debtor's counsel and the Trustee's counsel is denied.